**Faye GREEN et al., Plaintiffs,**

v.

**LOCAL 705, HOTEL AND RESTAURANT EMPLOYEES' AND BARTENDERS' INTERNATIONAL UNION, AFL-CIO, et al., Defendants.**

**Civ. A. No. 24041.**

United States District Court
E. D. Michigan, S. D.
July 18, 1963.

George Bashara, Detroit, Mich., for plaintiffs.

Schwartz, O'Hare & Levin and Boaz Siegel, Detroit, Mich., of counsel, for defendants.

TALBOT SMITH, District Judge.

The bill of complaint in this matter seeks relief under Title I, the "Bill of Rights" section of the Labor-Management Reporting and Disclosure Act of 1959 (the Landrum-Griffin Act).[1]

The charges made involve extortion, violence and intimidation, job discrimination in favor of those who have "paid off" certain of the defendants, the extortionate and unnecessary operation by defendants of a "so called 'waitresses school'" required to be attended (for

1. 73 Stat. 522, 29 U.S.C. §§ 411-415.

fee, the disposition of which is said to be unknown) by certain of the plaintiffs, despite their experience in their calling, conspiracy with employees "for a consideration" to ignore the terms of their contracts with the Union, intimidation of other employers through threats of labor troubles unless payments were made to defendants, or some of them, and racial discrimination in job assignments. We make no effort to quote verbatim the lengthy complaint. Enough is shown to convey the flavor of the charges made, the aura of criminality sought to be imparted. The prayer for relief seeks among other relief, an injunction against beating and assaulting plaintiffs, an accounting, discovery, a placing of the hiring hall, in effect, in receivership, the court to appoint its director and to supervise its operation and management, and similar and related relief.

In fairness to defendants it should be pointed out that no answer has yet been filed, although defendants' brief in support of the motion now before the court asserts, *inter alia,* that the complaint "is filled throughout its pages with allegations which are fallacious and which in numerous instances clearly were thrown together without any attempt at verification or specificity."

The principal thrust of the motion to dismiss is lack of jurisdiction, the complaint in terms being based upon Title I, the so-called Bill of Rights, and this court's jurisdiction alleged to be conferred thereby. The purpose of this title, it is clear from the legislative history,[2] is to preserve internal union democracy against the assaults of autocratic union management.[3] To this end the act guarantees to all union members "equal rights and privileges" in nominating and voting, with respect to union officers, subject to reasonable by-law or constitutional regulation. In addition the member is guaranteed freedom of speech and assembly, as well as freedom from the arbitrary increase in dues and assessments. It is provided, as well, that disciplinary procedures must conform to what is in effect a fair-hearing standard. The member's right to sue is protected, he is entitled to copies of any collective bargaining agreement affecting his rights, and, in event of violation of "rights secured by this title" he may bring a civil action in a district court of the United States. Thus it is that plaintiffs come to this court.

The position of the defendants is clear and clearly stated. It is, simply put, that none of the criminal and discriminatory acts alleged comes under the protection of Title I, under which jurisdiction is asserted. No right to vote is allegedly infringed, nor the right to speak freely, to nominate candidates, to assemble without restraint, or to enjoy any of the other internal freedoms specifically set forth in Title I.

It is true, of course, in a broad sense, that if a union member is assaulted and as a result thereof confined to a hospital bed, or, indeed, kidnapped and spirited from the jurisdiction, he may be prevented from voting in the next union election or regarded as "disciplined". But so interpreted Title I swallows too much. It must be interpreted in the light of its legislative history, to insure internal union democracy, and not so

---

2. See Horn v. Amalgamated Ass'n of Street, Elec. Ry. and Motor Coach Employees (E.D.Mich.1961), 194 F.Supp. 560.

3. Associate Dean Russell A. Smith of the University of Michigan Law School, and his co-author, LeRoy S. Merrifield, Professor of Law at George Washington University, in their book "Labor Relations Law" make the following observation at page 998 with respect to Title I of the Act before us: "Most noteworthy in this Act is the emphasis, not upon contract and property rights, but upon the analogy between the rights of union members and the rights of citizens in a political democracy, protected by Constitutional freedoms. The dominant idea in the 86th Congress was that labor unions are of such great public importance that legislation to protect union members in the exercise of basic liberties in the democratic process is essential—a far cry indeed from the concept of a labor union as a private voluntary association like a club."

broadly as to usurp the appropriate criminal jurisdiction or applicable statutory prohibitions against illegal or unfair labor practices.[4]

So far as favored job referral is concerned, it seems clear from the terms of the National Labor Relations Act, as well as the reported cases construing it, that plaintiffs' allegations that some employees are being favored and others disfavored in the referral of jobs for extra waiters involve a charge for exclusive N.L.R.B. jurisdiction, either certainly, or, at least (which is sufficient), "arguably." The recent case of Local 100, United Ass'n of Journeymen and Apprentices v. Borden (1963), 373 U.S. 690 83 S.Ct. 1423, 10 L.Ed.2d 638, was just such a case, the court holding (with respect to a question involving job referral from a union hiring hall) that the matter was within the doctrine of San Diego Building Trades Council v. Garmon (1959), 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, namely, that state courts must defer to *"the exclusive competence of the National Labor Relations Board in cases in which the activity that is the subject matter of the litigation is arguably subject* to the protection of § 7 or the prohibitions of § 8 of the National Labor Relations Act". 373 U.S. 690, 693, 83 S. Ct. 1423, 1425. (Emphasis added, footnote omitted.)

██ In short, the Landrum-Griffin Act, under which this bill is brought, "does not supplant remedies available under the law. Where a remedy does exist through other Congressional legislation specially geared for such purpose, and no indication is evident in the Act pursued which provides the remedy

sought, nor any expressed or manifest intent on the part of the framers of said Act evident in any of their pronouncements, I have no basis to read into the Act this jurisdiction. This view is buttressed by Section 103 of the Act which provides, inter alia, as follows:

> " 'Nothing contained in this subchapter (Title I of the Act) shall limit the rights and remedies of any member of a labor organization under any State or Federal law or before any court or other tribunal, or under the constitution and by-laws of any labor organization.' (29 U.S. C.A. § 413.)" [5]

This is not to say that such criminal and illegal acts as are here alleged, if proved, are without redress in the appropriate forum. Here the precise issue is just that, the forum, and it is the holding of this court that such forum is not that of the district court of the United States under the grant of jurisdiction found in Title I of the Landrum-Griffin Act. In short, as my brother Freeman put it,[6] Title I is not a "catch all" into which disgruntled members may sweep all manner of miscellaneous charges. It is a specific section for the enforcement of specific rights, the violation of which is not even here reasonably or properly (or, in my judgment, intended to be) alleged.

Under the view taken of the case it is not necessary to pass upon that portion of defendants' motion involving the exhaustion of internal remedies within the Union.

Pursuant to the above, defendants' motion to dismiss must be granted. An appropriate order may be submitted.

---

4. In the Miranda Fuel Co. case, 140 NLRB No. 7 (1962), wherein a union unlawfully caused an employer to discriminate against an employee, the Board held in part as follows: "We further conclude that a statutory bargaining representative and an employer also respectively violate Section 8(b) (2) and 8(a) (3) [of the National Labor Relations Act, 49 Stat. 452, as amended, 29 U.S.C. § 158(b) (2) and (a) (3)] when, for arbitrary or irrelevant reasons or upon the basis of an unfair classification, the union attempts to cause or does cause an employer to derogate the employment status of an employee."

5. Rinker v. Local 24 of Amalgamated Lithographers (W.D.Pa.1962), 201 F. Supp. 204, 206.

6. Horn v. Amalgamated Ass'n of Street, Elec. Ry. and Motor Coach Employees (E.D.Mich.1961) 194 F.Supp. 560, 562.